Brian Miller
MORRISON, SHERWOOD, WILSON, & DEOLA, PLLP
401 North Last Chance Gulch
Helena, MT  59601
406-442-3261 Phone
406-443-7294 Fax
bmiller@mswdlaw.com
*Attorney for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| DAVID P. KING, JR.,<br><br>　　　　Plaintiff,<br><br>v.<br><br>LSF9 MASTER PARTICIPATION TRUST,<br><br>　　　　Defendant. | Case No. 9:17-cv-00172-DLC-JCL<br><br>**PRELIMINARY PRETRIAL STATEMENT** |

COMES NOW Plaintiff DAVID P. KING, JR. and files this Preliminary Pretrial Statement pursuant to L.R. 16(b)(1).

A. Brief Factual Outline of the Case

This case arose when Plaintiff David King noticed a series of irregularities in the loan transfer history of his mortgage.  As detailed in the First Amended Complaint, Mr. King had purchased land in Darby, Montana, Ravalli County in the early 2000's, and began building a home there.  Mr. King had hired a company called Duncan Woods Log Homes, Inc. to build

1

the home, while Lincoln Logs, LTD supplied the construction materials. Duncan Woods negligently constructed the home and it was plagued with defects. The cost overruns forced Mr. King to take a $ 350,000 construction loan that was secured by the real property. The loan was through IndyMac Bank, FSB. Eventually, King filed suit against Duncan Woods and Lincoln Logs. A jury awarded Mr. King $ 482,336.00 in *King v. Lincoln Logs*, DV-06-184.

IndyMac Bank, F.S.B. went into receivership, and its former assets were transferred to IndyMac Federal Bank, F.S.B. During this time, Mr. King was working with IndyMac Federal Bank, F.S.B. on his loan and it was anticipated that the proceeds from the verdict would be used to pay off the loan. Unfortunately, Lincoln Logs went into bankruptcy.

In March of 2009, the supposed handoffs of Mr. King's loan began. On March 16, 2009, Mr. King's loan and note was reportedly delivered to IndyMac Federal Bank, F.S.B. The man who signed the transfer, "Roger Stotts" is a documented robo-signer. While claiming to be in possession of the note, IndyMac Federal Bank, F.S.B., began noticing foreclosure sales.

Then on July 23, 2010, a woman named Erica A. Johnson-Seck, again a documented "robo signer," purported to deliver Mr. King's note from IndyMac Bank, F.S.B. to OneWestBank, F.S.B. This was strange because

2

at that time IndyMac Bank F.S.B. was no longer in existence and Mr. King's note was purportedly in the hands of IndyMac Federal Bank, F.S.B.

Once OneWest claimed to be in possession of the Note and loan, it began noticing foreclosure sales as well, in August and November of 2010. During this entire time, Mr. King remained in active communication with the entities claiming possession of his Note, and attempted to find a way to get the loan back on track given the unfortunate set of circumstances that he found himself in.

Mr. King subsequently filed bankruptcy while trying to find a way to work out the situation with the entities who told him they held his Note. In the bankruptcy proceedings, OneWest produced a document that it claimed was a true and correct copy of King's promissory note.  It produced this document in order to substantiate a proof of claim.

However, instead of pursuing its claim, OneWest later claimed to hand King's note off to another entity named Ocwen Loan Servicing, LLC. Ocwen then claimed to pass the Note off to an entity called "Seretus," which was acting on behalf of the Federal National Mortgage Association. By that time, King's bankruptcy was concluded, and once it claimed to have the note, Federal National Mortgage Association began recording Notices of Trustee's sales as well.

3

King had never received any notification of the transfers from OneWest to Federal National Mortgage Association, so he reopened his bankruptcy in order to sort the issue out.  After first contesting King's proceedings, OneWest did stop claiming that it held King's note.  That left Federal National Mortgage Association as the entity claiming to hold King's Note and the right to enforce it.  In fact, in discovery responses that FNMA submitted during the bankruptcy proceedings dated October 3, 2016, it claimed that it had been holding Mr. King's note for some time.

Then, LSF9 Master Participation appeared, now claiming that it was holding Mr. King's Note and that it had been in possession of the same as of August 24, 2016.  This was strange because as late as October 3, 2016, FNMA claimed that it was holding Mr. King's Note too.  Ultimately, FNMA told the bankruptcy court that it was no longer holding the Note.  By that time, Mr. King had amended his complaint in the adversary proceeding, naming LSF9 as an additional defendant.

Once it was the sole remaining defendant in the adversary proceeding, LSF9 moved to dismiss King's complaint.  The motion was granted, but not on the merits.  Instead, bankruptcy judge Jim Pappas made clear that there were irregularities in the case, going so far as to suggest to Mr. King that he might have claims against LSF9 which could be

litigated in state or federal district court. However, because the proceeding was not deemed "core" to the bankruptcy, Judge Pappas concluded he did not have jurisdiction.

In an exchange with the bankruptcy court prior to dismissal, LSF9 implied that it had in its possession King's original promissory note. But when pressed directly by the Court, LSF9 demurred, indicating that perhaps it didn't really possess said document. During those proceedings, LSF9 had previously produced a document, attached to the affidavit of a supposed records custodian named "Nathaniel Mansi". Mr. Mansi claimed to have personal knowledge of Mr. King's loan file, and claimed to produce a copy of King's original promissory note. However, this note is not the same note that OneWest had previously stated was the original note when it had been named as a defendant in King's bankruptcy proceedings. Since OneWest produced its copy of the original note in 2011, and since the original note itself was supposedly delivered through a series of transfers to LSF9, the discrepancy does not make sense.

Complicating matters further, once LSF9 responded to the allegations in this suit, it then produced another copy of King's Promissory Note (also claiming, like it had in the bankruptcy proceeding that it was a true and correct copy of the original in its possession). This copy came through the

5

affidavit of a woman named Jaime Guevara who, just like Mr. Mansi, claimed to have personal knowledge of the contents of King's loan file.

Accordingly, at this stage in the proceedings, the Court has before it 3 different copies of Mr. King's Promissory, with separate entities all claiming at various times that each is a copy of the original note, which was supposedly delivered from entity to entity until it wound up in the hands of LSF9. If Mr. King's Note really was delivered from entity to entity, one would expect that there wouldn't be three different versions of the Note, but only one.

Complicating the issues further is the fact that three of the individuals involved in these supposedly deliveries, have all been found by other courts to be notorious robo-signers, which means they sign paperwork for mortgage transfers without any personal knowledge of transfers happening or any idea about a particular borrower's loan.

A "Mr. Roger Stott" supposedly was involved in the hand off of Mr. King's Promissory Note in March of 2009 to IndyMac Federal Bank, F.S.B. In 2012, a New York state court described Mr. Stotts as a "robosigner" who made "disingenuous statements." *IndyMac Fed. Bank FSB v. Meisels*, 2012 N.Y. Misc. LEXIS 4722 (Sup Ct. NY Kings County October 5, 2012).

In July of 2010, a woman named "Erica A. Johnson-Seck," was supposedly involved in the handoff of King's Note to from IndyMac FSB (which didn't exists at that time and wasn't supposed to be in possession of Mr. Kings' note) to OneWest Bank, F.S.B.  In 2010, a New York State Court described Mrs. Johnson-Seck as a having a tangled employment situation as a robo-signer.  *OneWest Bank, F.S.B. v. Drayton*, 910 N.Y.S.2d 857, 871 (Sup. Ct. NY Kings County October 21, 2010).

Finally, the Note which LSF9 now claims is the copy of the original was indorsed by a woman named "Cathy Powers." In 2015, a federal district court in Texas found that a document indorsed by Ms. Powers was not properly authenticated, was inadmissible and unenforceable, and denied Deutsche Bank's efforts to foreclose on an interest founded in the note.  *Duetsche Bank National Trust Co. v. Burke*, 117 F.Supp.3d 953 (S.D. Tex. 2015).

Mr. King's instant suit essentially challenges LSF9's status as the holder of his Note based on these systematic and pervasive irregularities in the transfer history, and claims that LSF9 is misrepresenting its status as a beneficiary.  LSF9 may be liable to Mr. King for any damages that it causes him if it falsely claims to have the right to enforce an obligation that it does not have any right enforce.

7

B. Basis for Federal Jurisdiction and For Venue in the Division

The Defendant in this matter is an out-of-state resident, and the amount in controversy exceeds $ 75,000. Jurisdiction is therefore appropriate under diversity jurisdiction. 28 U.S.C. § 1332. Venue is proper in the Missoula division of the Montana Federal District because the real property at issue, as well as any potential tortious conduct of the defendants, occurred in Ravalli County. Under these facts, venue would be appropriate under Montana law, and is therefore appropriate in this Court. L.R. 3.2.

C. Factual Basis for Each Claim or Defense Advanced by the Plaintiff

Mr. King has stated five claims: Negligent Misrepresentation, Constructive Fraud, Unfair and Deceptive Practices (in violation of the Montana Consumer Protection Act), violations of the Fair Debt Collection Practices Act (in particular 15 U.S.C. § 1692f(6)), and Punitive Damages. All of these claims are based on the underlying facts described above, and the fact that LSF9 is misrepresenting its status as a holder of Mr. King's Note, and trying to enforce an obligation which it has no right to enforce under Montana Small Tract Financing Act.

D. Legal Theory Underlying Each Claim or Defense

The theories for each of Mr. King's claims is briefly described as follows:

1. **Negligent Misrepresentation**. The theory for this claim was stated in *Morrow v. Bank of America*, 324 P.3d 1167, 1180 (Mont. 2014), as follows: "One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information."

2. **Constructive Fraud.**  The theory for this claim was stated in *Morrow*, 324 P.3d at 1183 as follows:  "Constructive fraud is a breach of duty which, without fraudulent intent, creates an advantage for the breaching party by misleading another person to that person's prejudice."

3. **Unfair and Deceptive Practices.**  The theory for this claim has been described recently in *Jacobson v. Bayview Loan Servicing, LLC*, 371 P.3d 397 (Mont. 2016), where the Court noted that the Montana Consumer Protection Act prohibits a party from stating that a

transaction involves rights that it does not involve, and held that misrepresentation of an entity's status as a beneficiary constitutes a violation of the MCPA. *Jacobson*, 371 P.3d at 410-411. Similarly, in *Puryer v. HSBC Bank USA, N.A.*, 419 P.3d 105, 2018 MT 124, ¶ 36, the Court recognized that a Plaintiff suffers damages in the form of costs and fees, attorney fees, and ascertainable losses of money or property by executing a legal proceeding to stop an improper foreclosure.

4. **Fair Debt Collection Practices Act (15 U.S.C. § 1692f(6))**. In *Puryer*, ¶¶ 27-31, the Court recently held that it constitutes a violation of 15 U.S.C. § 1692f(6) for an entity to attempt a non-judicial foreclosure without the legal authority to do so.

5. **Punitive Damages.** The theory for this claim is Section 27-1-220 and 221, MCA.

E. Computation of Damages

1. Lost time. Mr. King estimates he has spent somewhere between 40 and 60 hours dealing with LSF9 after it represented to him that it held his Note and wanted to foreclose on him. If the generally accepted rate of $ 15.00/hour as a "living wage" is placed on this time, the value of his time is somewhere between 600 and 900 dollars.

2. Attorney fees and other costs. During that time that Mr. King acted in a self-represented capacity, he may claim a reasonable attorney fee for his time. If so, his "lost time" may instead be treated as attorney fees. Mr. King incurred said fees in his self-represented capacity in this litigation and during bankruptcy proceedings. Additionally, Mr. King has incurred filing fees, other costs related to this litigation, and is incurring attorney fees through his current counsel.

3. Foreclosure costs. Mr. King has been charged fees and costs for the foreclosure actions by LSF9. These constitute damages under Montana law if LSF9 had no legal authority to initiate the foreclosure

4. Punitive damages. These are determined based on the net worth of the Defendant.

F. Pendency or Disposition of Any Related State or Federal Litigation

None.

G. Proposed Additional Stipulations of Fact Not Included in the Statement of Stipulated Facts

None.

H. Proposed Deadlines Relating to Joinder of Parties or Amendment of Pleadings

The parties have agreed on October 22, 2018.

I. Identification of Controlling Issues of Law Suitable for Pretrial Disposition

Plaintiff contends that there are no such issues after the Court's ruling on the motion for leave to amend.

J. The name and city and state of current residence of each individual known or believed to have information that may be used in proving or denying any party's claims or defenses, and a summary of that information.

1. Plaintiff David King.  Mr. King is knowledgeable of the facts and circumstances surround the claims in this case, and is knowledgeable about LSF9's action in the bankruptcy.

2. Nathaniel Mansi.  Mr. Mansi is an employee of Defendant and should have knowledge of the matters in his affidavit.

3. Jaime Guevara. Ms. Guevara is an employee of Defendant and should have knowledge of the matters in her affidavit.

K. Substance of Any Insurance Agreement

Unknown by Plaintiff.

L. Status of Any Settlement Discussions and Prospects for Compromise of Case

Plaintiff had previously been in the process of settlement discussions with Defendant, prior to Defendant's retention of their current counsel. Plaintiff believes it would be fruitful to resume settlement discussions at some point (whether by privately retained mediator or appointed Magistrate) and see if a compromise is possible.

M. Suitability of Special Procedures

None.

12

RESPECTFULLY SUBMITTED this 9th day of July, 2018

By:   /s/ Brian J. Miller
      Brian J. Miller
      MORRISON, SHERWOOD, WILSON, & DEOLA, PLLP
      *Attorneys for Plaintiff*