CROWLEY FLECK, PLLP
Kenneth K. Lay
900 N. Last Chance Gulch, Suite 200
Helena, MT 59601
Phone: (406) 449-4165
Fax: (406) 449-5149

PERKINS COIE LLP
Thomas N. Abbott
505 Howard Street, Suite 1000
San Francisco, CA 94105
Phone: (415) 344-7000
Fax: (415) 344-7050

*Attorneys for Defendant U.S. Bank Trust, N.A. as Trustee for LSF9 Master Participation Trust*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| DAVID P. KING, JR.,<br><br>                    Plaintiff,<br><br>       v.<br><br>LSF9 MASTER PARTICIPATION TRUST,<br><br>                    Defendant. | Case 9:17-cv-00172-DLC-JCL<br><br>**DEFENDANT U.S. BANK TRUST, N.A., AS TRUSTEE FOR LSF9 MASTER PARTICIPATION TRUST'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT.** |

Defendant U.S. Bank Trust, N.A., as Trustee for LSF9 Master Participation Trust ("U.S. Bank") submits this Reply in support of its Motion for Summary Judgment.

U.S. Bank did not negligently, fraudulently, or deceptively represent its ownership of Plaintiff David King's ("King") mortgage loan, or its right to foreclose based on Mr. King's admitted default. Mr. King has failed to raise any genuine issue of fact regarding whether U.S. Bank knew or should have known of alleged defects in the chain of title or loan documents, or that U.S. Bank otherwise acted unreasonably in asserting its right to foreclose. U.S. Bank's right to foreclose did not require proof of possession of original loan documents, and the argument King makes here (often called the "Show-Me-the-Note" theory) is an immaterial distraction that is contrary to Montana Law.

King cannot avoid summary judgment by disputing whether U.S. Bank possesses the original Note and/or Deed of Trust, because that issue is wholly immaterial to his claims. King's challenge to U.S. Bank's authority to foreclose stems entirely from his baseless skepticism as to whether U.S. Bank "is in possession of Mr. King's original loan documents." Opp., p. 23. However, Montana state courts have consistently rejected the arguments King now makes as a basis for challenging a lender's right to foreclose under the Montana Small Tract Financing Act, § 71-1-301 *et seq.*, MCA ("STFA"). Proof of possession of the original loan documents is simply not required for a lender to foreclose under the STFA. Thus, the inquiry is immaterial to King's claims.

All of King's claims center on his allegation that U.S. Bank misrepresented its ownership of the Loan and its right to foreclose, because it knew or should have known that it was not the lawful owner of the loan. Those arguments fail because U.S. Bank's ownership of King's Loan is established by the chain of recorded assignments, which is all that the STFA requires. King has not shown any genuine issue of fact regarding the chain of assignments or U.S. Bank's status as the beneficiary of his Loan, as evidenced by those assignments.

### A. The "Show-Me-the-Note" Theory Is Not an Actionable Challenge to a Lender's Right to Foreclose under the STFA.

Montana state courts—any numerous federal courts—have consistently rejected "show-me-the-note" arguments as a way to thwart non-judicial foreclosure statutes. The STFA was designed as a way to provide "a streamlined process for the foreclosure of simple mortgages." *Knucklehead Land Co. v. Accutitle, Inc.*, 2007 MT 301, ¶ 15, 340 Mont. 62, 172 P.3d 116. The STFA sets up a nonjudicial foreclosure process where, unlike a traditional judicial foreclosure, lenders are not required to go to court to establish the right to foreclose. *See Midfirst Bank, Stat Sav. Bank v. Ranieri*, 257 Mont. 312, 319, 848 P.2d 1046, 1049-50 (1993).

The "show-me-the note" theory turns the concept of nonjudicial foreclosure on its head:

> This claim – colloquially called the 'show-me-the-note' theory – began circulating in courts across the country in 2009. Advocates of this theory believe that only the holder of the original wet-ink signature note has the lawful power to initiate a non-judicial foreclosure. The courts, however, have roundly rejected this theory and dismissed the claims, because foreclosure statutes simply do not require possession or production of the original note.

*Martins v. BAC Home Loans Servicing*, LP, 722 F.3d 249 (5th Cir. 2013).

Montana courts have followed the national trend of rejecting "show-me-the-note" arguments because Montana's Small Tract Financing Act does not require possession or production of the original note. For example, Judge Watters (then a state district court judge) rejected the "show-me-the-note" argument as a red herring in *Waide v. U.S. Bank Nat'l. Assn.*, Cause No. DV-10-1763, p. 8 (Mont. 13th Jud. Dist., June 28, 2011) (attached as Exh. 1), concluding that "the law does not require the beneficiary of a trust indenture to have possession of an original note in order to enforce its terms." Other Montana courts have done the same:

> [Plaintiff's] 'show-me-the-note' theory is not cognizable under Montana's Small Tract Financing Act. Section 71-1-313, MCA delineates the conditions that must exist for a trustee to properly foreclose a trust indenture. Notably absent from § 71-1-313, MCA is the requirement that the trustee or beneficiary prove ownership of the original note prior to initiating foreclosure proceedings.

*Sollid v. America's Wholesale Lender et al.*, Cause No. CDV-11-0141 , (Mont. 8th Jud. Dist., Nov. 5, 2012), pp. 6–7 (attached as Exhibit 2); *see also Oakes v. Wells Fargo Financial Montana, Inc.*, Cause No. DV-2010-80, p. 2 (Mont. 5th

Jud. Dist. April 3, 2012) (attached as Exhibit 3) ("A portion of Oakes' concern now apparently lies in their desire to see the original note. Nothing in the law requires that it be produced for them. More importantly, the fact Oakes desire to see the original note in no way forestalls a foreclosure action either by judicial action or by trustee's sale."); *Mavros v. Wells Fargo Bank, N.A.*, Cause No. DV 16-144 (Mont. 21st Judicial Dist. April 3, 2017) (attached as Exh. 4) (holding that a beneficiary is "[n]ot required to produce the original note in a nonjudicial foreclosure under the STFA," and that "the so-called 'show-me-the-note' theory . . . is wholly unsupported in the law and has also been consistently rejected by courts nationwide, including numerous Montana courts").

Contrary to King's assertions, U.S. Bank is not claiming authority to enforce the loan "based on the sole fact that it is in possession of Mr. King's original loan documents." Opp. at 23. U.S. Bank has established ownership of the Loan based on the undisputed facts surrounding the FDIC's transfer of IndyMac's assets to OneWest, as shown in Exhs. A-C to the Lay Affidavit,[1]

---

[1] The court may consider Exhibits A-C to the Lay Declaration (Docs. 57-1, 57-2, 57-3) because they are properly subject to judicial notice. These documents are "generally known within the territorial jurisdiction of the trial court" (*see, e.g.*, *Rathburn*, 916 F.Supp.2d 1174, 1176 (D. Mont. 2013), and "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Rule 201, F.R.Evid. They are available on the FDIC website, http://www.fdic.gov/bank/individual/failed/IndyMac.html, and

and the subsequent recorded chain of assignments in Ravalli County. *See* Doc. 56, pp. 3-6. The STFA's conditions for foreclosure require <u>only</u> that "the trust indenture, any assignments of the trust indenture . . . and any appointment of a successor trustee" be recorded before a beneficiary may foreclose. Sec. 71-1-313(1), MCA.

King has presented no evidence to dispute the recorded chain of assignments, claiming instead that U.S. Bank misrepresented its right to foreclose because he believes the Note in U.S. Bank's possession is not the original. That claim does not present an issue of *material* fact, however, because "the law does not require the beneficiary of a trust indenture to have possession of an original note in order to enforce its terms." *Waide*, p. 8.

**B.    King's Attempts to Cast Doubt on the Note and Deed of Trust Are Baseless.**

Even if King's challenge to U.S. Bank's possession of the original note were a valid cause of action under Montana law, it is meritless and King has not presented any evidence that would salvage his claims from summary

---

proper subjects for judicial notice. *See Abelyan v. OneWest Bank*, 2011 WL 13182971, *5, at n. 4 ("The Court takes judicial notice of fact sheets from the FDIC's official website regarding the FDIC's sale of Indymac's assets to OneWest"); *Coppes v. Wachovia Mortg. Corp.*, 2010 WL 4483817, *3 (taking judicial notice of documents found on the FDIC's official website). If the Court feels foundation is lacking, U.S. Bank respectfully requests it take judicial notice of these documents.

judgment.

King relies heavily on "unexplained irregularities" in the signature lines of the Deed of Trust—specifically, a gap between two separate signature blanks on the same line—to insinuate the documents are forged. Doc. 72 at 10-11, 17 (citing Miller Decl. Ex. 15). This assertion is refuted by face of the document itself:



Doc. 57-4, p. 13.

The Kings' Deed of Trust shows they signed a standard Freddie Mac/Fannie Mae form "3027 1-01 (rev. 12/03)." *Id.* This identical form remains available on the Freddie Mac webpage.[2] In the form available on the webpage, identical gaps appear between the two separate signature blanks on each signature line:

---

[2] http://www.freddiemac.com/uniform/unifsecurity.html.

> BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.
>
> _____    _____ (Seal)
>                                                                                                      - Borrower
>
> _____    _____ (Seal)
>                                                                                                       - Borrower
>
> _____[Space Below This Line For Acknowledgment]_____
>
> MONTANA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3027   1/01 (rev. 12/03)*(page 17 of 17 pages)*

Thus, the "gap" in the signature lines, which is King's principal basis for alleging forgery, is easily explained on the face of the form itself.

King also points to minor differences between various copies of the Note. However, it is clear from the face of these documents that they are copies of the same original—they contain identical images of the core printed text and signatures (though differences in the resolution or image quality may exist due to the use of different scanners, photocopiers, or settings, etc.). The variations that King relies on were all additions made either *after* the document was signed (such as the endorsement in blank), or on copies of the document,

8

(such as the stamp stating "Lenders Choice Title Certifies this Document to be a True and Correct Copy").  The fact that copies of the document may bear stamps or writings not present on the original does not raise a genuine issue of fact about U.S. Bank's possession of the original Note, which it has affirmed in numerous sworn statements.[3]  None of these variations suggest that U.S. Bank acted unreasonably in asserting ownership of the Loan and a right to foreclose.

Contrary to King's arguments, LSF9 and Fannie Mae did not claim to both hold King's Note at overlapping times.  King cites Exhibits 8 (Amended Response to Request No. 3) (Doc. 74-8) and 9 (Notice of Sale to LSF9) (Doc. 74-9) to the Miller declaration to support this theory.  But in Doc. 74-8, Fannie Mae simply stated when it purchased the loan from IndyMac Bank, F.S.B., and said nothing of when it sold the Note or whether it currently owned the Note.

Finally, King extensively references Bankruptcy Judge Jim Pappas' comments during King's bankruptcy proceeding as evidence that Judge Pappas felt King had valid claims regarding possession of the original Note.  But Judge

---

[3] Additionally, U.S. Bank's own expert has examined the original documents and provided a report explaining, in compelling detail, why the Note and Deed of Trust in U.S. Bank's possession are in fact the originals signed by King.  See Exh. 5.  Ultimately, however, U.S. Bank should not have to go to court to prove that to a jury, nor should it have to the do battle with Plaintiff's expert over immaterial technicalities and the differences in various electronic copies of the Note.  The "streamlined" non-judicial foreclosure process of the STFA – which does not require proof of possession of an original Note – was designed to eliminate exactly this situation.

Pappas said no such thing—he stated "*I don't know*, you *may* have a good claim against this trust." Opp. at 7 (emphasis added). But Judge Pappas refused to rule on the question because it was out of the bankruptcy court's jurisdiction. *Id.* Any statement by Judge Pappas is not contradictory evidence against U.S. Bank's motion for summary judgment. *See Export Group v. Reef Indus.*, 54 F.3d 1466, 1472-73 (9th Cir. 1995) (refusing to apply dicta of prior decision).

**C.     Summary Judgment is Appropriate Because the Undisputed Facts Show U.S. Bank Reasonably Believed it is the Owner of the Loan.**

U.S. Bank's reasonable belief that it is the rightful holder of the Loan defeats all of King's claims. Doc. 56, pp. 7-11. King argues that it is improper to grant summary judgment on "reasonableness" because it is "generally a question of fact to be submitted to the jury." Doc. 72, p. 20. However,

> *summary judgment is not precluded altogether on questions of reasonableness*. It is appropriate when only one conclusion about the conduct's reasonableness is possible.

*Gorman v. Wolpoff & Abrams*on, 584 F.3d 1147–53 (9th Cir. 2009) (emphasis added). *See also In re Software Toolworks, Inc.*, 50 F.3d 615, 621 (9th Cir. 1994); *West v. State Farm Fire & Casualty Co.*, 868 F.2d 348, 350 (9th Cir.1989) (reasonableness "becomes a question of law and loses its triable character if the undisputed facts leave no room for a reasonable difference of opinion").

U.S. Bank has demonstrated the complete chain of assignment of the

10

Loan through undisputed facts and recorded documents. Doc. 56, pp. 3-6. U.S. Bank established that it reasonably believed that it had the authority to enforce the Loan, with no reason to question the chain of assignments. *Id*., pp. 10-13. Montana statue and case law both contemplate reliance on the chain of recorded assignments to determine whether a party has the right to enforce a loan. Sec. 71-1-313(1), MCA; *Ruby Valley Nat. Bank v. Wells Fargo Delaware Tr. Co.*, 373 Mont. 374, 382–83, 317 P.3d 174, 180 (2014). Despite King's attempts to sow confusion on the immaterial issue of whether U.S. Bank is in possession of the original Note, the actual issue in the case is whether U.S. Bank lacked a reasonable basis to assert ownership when it initiated foreclosure proceedings on the Property. King has not presented any evidence that existed *at the time U.S. Bank initiated the foreclosure* that U.S. Bank acted unreasonably in foreclosing on King's defaulted Note.

**D.    King's Negligent Misrepresentation Claims Fail Because He Has Presented No Evidence U.S. Bank acted Without Reasonable Care, and No Evidence He Relied on U.S. Bank's Representations.**

To establish negligent misrepresentation, King must present evidence that U.S. Bank made a representation to him without "exercis[ing] reasonable care and competence…." *Restatement (Second) of Torts*, § 552 (1977). King again relies on immaterial questions about U.S. Bank's possession of the original Note and Deed of trust. Doc. 72, pp. 27-28. But as demonstrated

11

above, U.S. Bank had no reason to question the authenticity of the Note (because possession of the original documents is not required) and U.S. Bank had every reason to believe that it had received a valid assignment and transfer of the Loan from Fannie Mae. Nothing in the Loan file indicated that there were any problems with the recorded chain of assignments.

Finally, the claim for negligent misrepresentation requires detrimental reliance on the alleged representation. King did not rely on the truth of U.S. Bank's representations; to the contrary, he immediately and vigorously <u>disputed</u> those representations of ownership and the right to foreclose. King claims the representations "forced [him] to take action" by filing suit (Doc. 72, p. 24), but that argument is nonsensical. Filing suit to expressly dispute a representation is not, in any fashion, an act taken in reliance on the truth of that representation.

**E.     U.S. Bank Is Entitled to Summary Judgment on King's Constructive Fraud Claim.**

King's constructive fraud claims fail because he has not established a duty on which the claim is based. *See* § 28-2-406, MCA. King does not refute that absent any genuinely "extraordinary circumstances or interaction between a lender and borrower," Banks owe no special duties to their borrowers in the arms' length transaction of a mortgage loan. *Anderson v. ReconTrust Co., N.A.*, 390 Mont. 12, 17, 407 P.3d 692, 697 (2017). Instead King relies on a

statement from *Grizzly Security* that indicates a duty may exist "when one party creates, by words or conduct, a false impression concerning serious impairments or other matters." Opp. at 25 (citing *Grizzly Security Armored Express, Inc. v. Bancard Services, Inc.*, 385 Mont. 307, 323, 384 P. 3d 68, 79-80 (2016). But King leaves out the next, crucial part of the sentence: "and subsequently fail[s] to disclose the relevant fact[s]." *Grizzly Security*, 385 Mont. at 323. King does allege—or present any evidence—that U.S. Bank knew the "relevant facts" and failed to disclose them.

Finally, the claim for constructive fraud, like negligent misrepresentation, requires detrimental reliance on the truth of the alleged representation, which King cannot establish.

### F. King's Fair Debt Collection Practices Act Fails Because U.S. Bank is Entitled to Enforce the Loan Irrespective of Possession of the Note.

King's FDCPA claim alleges that U.S. Bank initiated a non-judicial foreclosure without a "present right to possession of the property claimed as collateral through an enforceable security interest." 15 U.S.C. § 1692f(6)(A). King's only argument that U.S. Bank lacked the right to enforce the loan documents is his allegation that U.S. Bank might not have the originals. However, U.S. Bank has presented undisputed evidence that it is the beneficiary of the Deed of Trust based on the recorded (and undisputed) chain of assignments. Even if U.S. Bank did not possess the original note, it could

still properly assert the right to foreclose under the STFA on that basis. Sec. 71-1-313(1), MCA. King's only basis in his Brief in Opposition for disputing the recorded assignments is his speculation that U.S. Bank does not possess original loan documents. *See* Doc. 72, p. 19 (arguing that "if the recorded assignments represented actual transfers, of Mr. King's Note and Deed from entity to entity, then the original documents should now be in possession of LSF9"). However, under Montana law, U.S. Bank was not required to establish possession of the Note in order to have a "right of possession of the property claimed as collateral through an enforceable security interest," as contemplated by the FDCPA, § 1692(f)(6). Montana law simply "does not require the beneficiary of a trust indenture to have possession of an original note in order to enforce its terms." *Waide*, p. 8. Thus, King's FDCPA claim under § 1692(f)(6) fails as a matter of law.

**G.** **U.S. Bank is Entitled to Enforce the Note and Deed of Trust, and Did Not Violate the FDCPA, Therefore His MCPA Claim Fails.**

King links his FDCPA claim to his claim under the Montana Consumer Protection Act, arguing that "a violation of the Fair Debt Collection Practices Act can also constitute grounds for a violation of the Montana Consumer Protection Act." Doc. 72, p. 24. King states that U.S. Bank's claim that it has the right to enforce the Loan is deceptive—the same premise that forms the basis of his FDCPA claim. But as described above, U.S. Bank did have the

14

right to enforce the Loan.

Even assuming *arguendo* that there were some genuine dispute over U.S. Bank's right to enforce the loan documents, King has failed to show the requisite unfair or deceptive acts required by the Consumer Protection Act. King would still need to show U.S. Bank had "offend[ed] established public policy" and acted in a way "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Rohrer v. Knudsen*, 349 Mont. 197, 205, 203 P.3d 759 (2009). Nothing in the record indicates that U.S. Bank engaged in acts that are contrary to public policy, immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. To the contrary, all the evidence in the public records and before the Court supports U.S. Bank's reasonable belief that it received a valid transfer of King's loan from Fannie Mae. King has identified nothing in the loan file that would give U.S. Bank any reason to question the authenticity of the documents at the time it initiated the foreclosure proceedings, such that doing so was unfair and deceptive under the MCPA.

## CONCLUSION

For the reasons set forth herein, U.S. Bank respectfully requests the Court grant its Motion for Summary Judgment.

Dated: May 15, 2019                      **CROWLEY FLECK, PLLP**

                                               By: */s/* Kenneth L. Lay
                                                    Kenneth K. Lay
                                                    900 N. Last Chance Gulch, Suite 200
                                                    Helena, MT 59601

## CERTIFICATION UNDER LR 7.1(d)(2)

This brief complies with the applicable word-count limitation under LR 7.1(d)(2) because it contains 3247 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, exhibits, and any certificates of counsel.

| | |
|---|---|
| Dated: May 15, 2019 | **CROWLEY FLECK, PLLP** |//
| | By: /s/ Kenneth L. Lay |
| | Kenneth K. Lay |
| | 900 N. Last Chance Gulch, Suite 200 |
| | Helena, MT 59601 |