CROWLEY FLECK, PLLP
Kenneth K. Lay
900 N. Last Chance Gulch #200
Helena, MT 59601
Phone: (406) 449-4165
Fax: (406) 449-5149

PERKINS COIE LLP
Thomas N. Abbott
505 Howard Street, Suite 1000
San Francisco, CA 94105
Phone: (415) 344-7000
Fax: (415) 344-7050

Attorneys for Defendant
U.S. Bank Trust, N.A. as Trustee for
LSF9 Master Participation Trust

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| DAVID P. KING, JR.,<br><br>    Plaintiff,<br><br>v.<br><br>LSF9 MASTER PARTICIPATION TRUST,<br><br>    Defendants. | Case 9:17-cv-00172-DLC-JCL<br><br>**BRIEF IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE EXPERT WITNESSES SYLVIA KESSLER AND DAVID WITZKE** |

Defendant U.S. Bank Trust, N.A., as trustee of the LSF9 Master Participation Trust ("U.S. Bank") files the following brief in support of its motion in limine to exclude Plaintiff David P. King, Jr.'s ("King") expert witnesses Sylvia Kessler and David Witzke.

## I. BACKGROUND

The relevant facts of this case are straightforward and largely undisputed, as set forth in U.S. Bank's separately filed summary judgment briefing.

In 2008, King obtained a $350,000 mortgage loan from IndyMac Bank, FSB. First Amended Complaint (Doc. 40) ("Complaint"), ¶ 13; Doc. 59, ¶ 3. King signed the Note as evidence of the debt. *See* Doc. 59, ¶ 7. King also signed a Deed of Trust (the "Deed of Trust") as security for repayment of the debt. Doc. 43, ¶ 4. King admits he ceased making payments on the loan shortly after obtaining the loan. Exh. 1, Deposition of David King, 77:10-23, 108:14-23. The loan is now more than a decade delinquent, and due for the October 1, 2008 payment and all installments due thereafter. Doc. 59, ¶ 15.

U.S. Bank is the current beneficiary of King's Deed of Trust, as shown by a series of recorded assignments and other evidence establishing U.S. Bank's ownership of the loan. Doc. 43 (Statement of Stipulated Facts) ¶¶ 4, 5, 8, 11, 12, 15; *see also* Doc. 58, ¶¶ 3-19. King has filed this suit asserting tort claims based on a challenge to U.S. Bank's status as beneficiary, and its attendant right to foreclose. King's claims are based largely on his belief that U.S. Bank does not possess his original Note. *See* Doc. 40, First Am. Complaint, ¶ 50 ("King alleges that LSF9 does not have possession of the Promissory Note, is misrepresenting its status as a holder of the Promissory

Note and is not entitled to enforce it, or exercise the power of sale or the right of foreclosure.").

Significantly, however, King has never disputed that the copies of the Note provided to him by U.S. Bank accurately reflect the loan contract he signed, and his resulting debt. He has never alleged that the language or substance of the Note or Deed of Trust have been altered. To the contrary, when shown a copy of the Note at his deposition, King admitted: (1) that he recalls signing loan documents in 2008; and (2) that the Note looked familiar to him. Exh. 1, King Depo.,71:11-16, 73:3-5. King unequivocally agreed that the copy of the Note U.S. Bank showed him was "one of the contracts you had to sign where you were promising to repay the $350,000 that IndyMac was disbursing on your behalf." *Id.*, 73:15-19. Additionally, King has agreed and stipulated to this Court that he executed the Deed of Trust recorded as Document No. 602923 of the records of Ravalli County, Montana. Doc. 43 (Statement of Stipulated Facts), ¶ 4.

Thus, King is not disputing the existence of the Note, the substance of the contract created by the Note, the contract language found in the Note, or his failure to make mortgage payments for over 10 years (and counting). He is not disputing that he signed the Deed of Trust. King has repeatedly confirmed, in proceedings before this Court and the U.S. Bankruptcy Court for the District of

Montana, that he does not dispute he borrowed the money. King even claims he is willing to pay, if he can just ascertain who is entitled to receive his loan payments. Exh. 1, King Depo., 101:10-13. On that question of who is entitled to receive payments, King openly admits that no person or entity other than U.S. Bank, through its authorized loan servicer, Caliber Home Loans, Inc., is presently claiming ownership of his loan, or a right to payments on his loan. Exh. 3, King Depo., 93:24-94:3.

Despite these claims that he is not trying to avoid paying, King has filed this lawsuit premised on the specious claim that U.S. Bank has acted tortiously by attempting to enforce the Note and Deed of Trust. Specifically, King postulates that U.S. Bank "may only enforce the note, acting as a beneficiary, if it has valid possession" of the original note. First Am. Complaint, ¶ 56 (emphasis added). Based on this false assumption that possession of an original Note is a *sine qua non* prerequisite to the right to foreclose, "King alleges that LSF9 does not have possession of the Promissory Note, is misrepresenting its status as a holder of the Promissory Note, and is not entitled to enforce it, or exercise the power of sale or the right of foreclosure." First Am. Complaint, ¶ 53.

All of King's causes of action are, to some degree, premised on the notion that unless U.S. Bank can prove possession of the original Note, it is

misrepresenting its status as beneficiary and its rights under the Note and Deed of Trust. *See e.g.* First Am. Complaint, ¶¶ 60, 68, 76, 79. In support of that theory, Plaintiff has disclosed two experts: Sylvia Kessler and David Witzke (as a rebuttal expert), to opine that King did not sign the loan documents.

Ms. Kessler examined the Note and Deed of Trust in person at the San Francisco office of U.S. Bank's counsel Thomas N. Abbott. Her proffered opinion is that "the documents that [she] examined on February 4, 2019, are not true originals of the documents that Mr. King signed on March 27, 2008." Exh. 2, Report of S. Kessler, Feb. 15, 2019. However, Ms. Kessler's disclosed grounds for this opinion are extremely limited. Regarding her examination of the hardcopy original Note, Ms. Kessler's report states that the document she examined "had the appearance of an original," but then she states "there were critical qualities missing in the document…" Specifically, Ms. Kessler lists the following "missing" qualities:

- "[T]he normal wear and tear that would be there if this document had been signed in 2008 and handled numerous times in the transferring from one loan holder to another";

- "[C]onsistency in the reflective quality in the signature"; and


- "[I]ndentation of the fibers on the signature line of David Paul King, Jr."

Exh. 2, Kessler Report, p. 2. Other than these points, Ms. Kessler's report

discloses no other grounds or basis on which she questions the authenticity of the hardcopy of the Note that she examined. Rather, the remainder of Ms. Kessler's opinions relating to the Note are based on her examination of various electronic (PDF) copies of the Note that were provided to her by Plaintiff's counsel. *Id*., pp. 2-3. She claims that the electronic copies she examined have "critical unexplainable qualities" and show "evidence of staging." *Id*.

Regarding the Deed of Trust, Ms. Kessler's report discloses no specific basis to question the authenticity of the hardcopy of the Deed of Trust that she physically examined, except that she believes "the signature line on the deed of trust contains a break in it," which she says makes the document "suspect." *Id*., p. 3. Despite these suspicions, however, the fact that Mr. King's signed the Deed of Trust is a fact to which Plaintiff David King has already stipulated in the course of this lawsuit. *See* Doc. 43 (Statement of Stipulated Facts), ¶ 4.

Plaintiff later offered a "rebuttal" report from Mr. Witzke. *See* Exh. 3, Witzke Report. However, Mr. Witzke did not participate in the February 4, 2019 examination of the hardcopy documents; he only examined electronic (PDF) documents attached to the report of U.S. Bank's expert. Report of D. Witzke, March 18, 2019, at 2, 7. Mr. Witzke's report does not express any opinion regarding whether the Note is original, or the authenticity of Mr. King's signature on the Note. Like Ms. Kessler, however, Mr. Witzke's report

does, identify "a break in the line where the signature goes" on the Deed of Trust, and on that basis he concludes that "there are sufficient artifacts to call into question the conclusion rendered in [U.S. Bank's expert]'s opinion stated in subparagraph 3.b)."[1] *Id.* at 7.  Critically, however, Mr. Witzke does not express an opinion with a reasonable degree of certainty that defendant's expert's opinion is incorrect.  Rather, Mr. Witzke ultimately states that he would need "to examine the same 'original' documents" as U.S. Bank's expert "[t]o provide even further reliability and dependability in [his] finds and conclusion." *Id.* at 7.

    For the reasons discussed below, Plaintiff's proposed expert testimony should be excluded. First, there is no requirement in Montana that a trustee have possession of the original "wet-ink" signature note, making the entire issue of possession of original loan documents – and any expert testimony on that issue – completely irrelevant.  Second, the opinions of Plaintiff's experts are based on electronic scans of the note, not the actual original note.  Since Plaintiff is challenging possession of the original note itself, any arguments opinions about various electronic copies of the note are irrelevant.  The experts' opinions as to the electronic documents are likely to lead to confusion for the

---

[1] Subparagraph 3.b of defendant's expert stated that the Note and Deed of Trust "[d]o not contain any evidence which suggests they have been altered." Report of J. Merydith, Feb.12, 2019, at 1.

trier of fact and are more prejudicial than probative. Finally, to the extent Ms. Kessler has expressed opinions based on her examination of the hardcopy note in U.S. Bank's possession, she has admitted in her deposition that she lacks the expertise necessary to testify on those subjects. Accordingly, she is not qualified under Rule 702, Fed. R. Evid., to render her disclosed opinions.

## II. LEGAL STANDARDS

Only evidence that is relevant is admissible at trial. Fed. R. Evid. 402. Federal Rule of Evidence 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the action more probable or less probable than it would be without the evidence." Even evidence that is relevant may be "excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403.

Federal Rule of Evidence 702 requires that "[e]xpert testimony . . . be both relevant and reliable." *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 463 (9th Cir. 2014). Relevancy simply requires that "[t]he evidence . . . logically advance a material aspect of the party's case." *Id.* (quoting *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007)). An expert's testimony must be "the product of reliable principles and methods" and the expert must "reliably apply

the principles and methods to the facts of the case." Fed. R. Evid. 702(c)-(d). When expert "testimony's factual basis, data, principles, methods, or their application are called sufficiently into question, the trial judge must determine whether the testimony has 'a reliable basis in the knowledge and experience of [the relevant] discipline.'" *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 149 (1999) (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592 (1993) (alteration in original)).

## III. ARGUMENT

**A. Plaintiff should be barred from presenting expert testimony as to the whether the Note and Deed of Trust in U.S. Bank's possession are the original hardcopy documents, because that issue is irrelevant under Montana law**

The question of whether the hardcopy documents in U.S. Bank's possession are the original, signed copies of the Note and Deed of Trust is irrelevant to this case. Montana courts have rejected "show-me-the-note" arguments made by borrowers that are trying to avoid a valid debt by questioning whether the document held by the trustee is the original wet-ink signature note.

Ms. Kessler is Plaintiff's only expert that purports to offer an opinion about the actual hardcopy documents in U.S. Bank's possession. Mr. Witzke did not examine the hardcopy documents and, as such, offers no opinions or rebuttals regarding the hardcopy documents. Report of D. Witzke at 7.

Plaintiff's Note is subject to Montana's non-judicial foreclosure statute, the Small Tract Financing Act ("STFA"), MCA § 71-1-301 *et seq*. Montana courts have followed the national trend of rejecting "show-me-the-note" arguments, because Montana's Small Tract Financing Act does not require possession or production of the original note. MCA § 71-1-313.

> "[Plaintiff's] 'show-me-the-note' theory is not cognizable under Montana's Small Tract Financing Act. Section 71-1-313, MCA delineates the conditions that must exist for a trustee to properly foreclose a trust indenture. Notably absent from § 71-1-313, MCA is the requirement that the trustee or beneficiary prove ownership of the original note prior to initiating foreclosure proceedings."

*Sollid v. America's Wholesale Lender et al.*, Cause No. CDV-11-0141 (Mont. 8th Jud. Dist., Nov. 5, 2012) (Doc. 77-2); *see also Waide v. U.S. Bank Nat'l. Assn.*, Cause No. DV-10-1763, p. 8 (Mont. 13th Jud. Dist., June 28, 2011) (Doc. 77-1) (rejecting the "show-me-the-note" argument as a red herring and concluding that "the law does not require the beneficiary of a trust indenture to have possession of an original note in order to enforce its terms"); *Oakes v. Wells Fargo Financial Montana, Inc.*, Cause No. DV-2010-80, p. 2 (Mont. 5th Jud. Dist. April 3, 2012) (Doc. 77-3) *Mavros v. Wells Fargo Bank, N.A.*, Cause No. DV 16-144 (Mont. 21st Judicial Dist. April 3, 2017) (Doc. 77-4) (holding that a beneficiary is "[n]ot required to produce the original note in a nonjudicial foreclosure under the STFA" and that "the so-called 'show-me-the-note' theory . . . is wholly unsupported in the law and has also been consistently rejected by

courts nationwide, including numerous Montana courts").

Because a trustee is not required to have an original wet-ink signature note, Plaintiff's proposed expert testimony on whether U.S. Bank possesses the original Note is irrelevant under Fed. R. Evid. 402 and as such, a waste of time under Fed. R. Evid. 403. Further, it will likely mislead the jury by presenting evidence likely to confuse the issues. *Id.* Specifically, expert testimony from Ms. Kessler or Mr. Witzke that U.S. Bank does not possess the original Note would incorrectly suggest to the jury that the law requires U.S. Bank to prove possession of the original Note as a prerequisite to asserting its right to foreclose, which is legally incorrect.

**B.     Plaintiff should be barred from presenting expert testimony about electronic versions of the Note and Deed of Trust, as such testimony is irrelevant to whether U.S. Bank possesses the original documents.**

Even if Plaintiff is allowed to proceed on his "show-me-the-note" theory, the expert testimony relating to the electronic copies of the loan documents—as opposed to the hardcopy original documents in U.S. Bank's possession—is irrelevant. Plaintiff's theory centers on U.S. Bank not having the original Note *in its possession*, Am. Compl. ¶¶ 53, 56 (ECF No. 40) ("LSF9 may only enforce the note, acting as beneficiary, if it has valid possession."), but Plaintiff's experts offer opinions as to whether various electronic versions of the Notes have been altered. These opinions are entirely irrelevant as they do

not have bearing on the hardcopy document in U.S. Bank's possession. Fed. R. Evid. 402. The testimony would be a waste of time and would only serve to confuse the issues for the jury. Fed. R. Evid. 403. For these reasons, the testimony related to the electronic documents should be excluded.

**C. To the extent Ms. Kessler offers an opinion about the hardcopy Note in U.S. Bank's possession, her opinion should be excluded because she lacks expert qualifications to render those opinions.**

Ms. Kessler's opinion as to the authenticity of the original Note in U.S. Bank's possession rests on technical knowledge from fields in which Ms. Kessler admits she is not an expert. For expert testimony to be admissible, the expert must be qualified. *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1015 (9th Cir. 2004). An expert who expressly disclaims expertise sufficient to render opinions on the subject of the expert testimony may be properly excluded. *See Luttrell v. Novartis Pharmaceuticals Corp.*, 894 F.Supp.2d 1324, 1335-1335 (E.D. Wa. 2012); *Copeland v. Bieber*, 2016 WL 7079569 (E.D. Va. 2016) (excluding an expert based in part on the fact that "his deposition appears to expressly disclaim reliance on any specialized expertise he may have"); *O'Leyar v. Callender*, 255 Mont. 277, 280-81, 843 P.2d 304, 306 (1992) (holding the trial court did not err in concluding that an expert was incompetent and "could not testify in that particular area" after expert admitted "I am sorry, I am incompetent in that area".).

Ms. Kessler has expressly disclaimed having the expertise necessary to render her stated opinions about the hardcopy Note she examined at counsel's offices. In her report and deposition testimony, Ms. Kessler has identified four indicia that the hardcopy Note was not the original, signed Note:

(1) an alleged lack of "consistency in the reflective quality in the signature", which Ms. Kessler explained refers to fluorescence emitted by the signature ink, and flatness of ink on the fibers;

(2) lack of indentations on David King's signature;

(3) unspecified irregularities in Julie King's signature; and

(4) a lack of "normal wear and tear" on the documents.

Exh. 2 (Kessler Report), p. 2; Exh. 4, Depo. of Sylvia Kessler, 127:22-128:6.

Ms. Kessler's first criticisms regarding "reflective quality," lack of fluorescence, and flatness all deal with the appearance of ink on the page—a topic on which Ms. Kessler openly admits she is not an expert. Ms. Kessler first identified the lack of fluorescence emitted by the ink in the signature line as a reason to believe the signatures were not original signature. Exh. 4. 100:19-101:8; 112:1-3. But Ms. Kessler stated that she did not know how long fluorescence will emanate from ink on a document so she could not say "for certain" whether there would be fluorescence remaining in a document signed in 2008, like the Note was. *Id.*, 111:23-25, 113:13-21. Ms. Kessler next identified that the ink of the signature looked "flat" on the page, which she said

-13-

was related to the drying time of the ink. *Id.*, 113:25-114:24. But Ms. Kessler was unable to identify the type of ink used for the signatures, which would affect the drying time. *Id.*, 114:25-115:12, 115:20-116:4 ("Q. So you don't know what the chemical composition of the ink was; correct? A. No. Q. . . . And so you cannot say definitively since you don't know the composition of the ink on the documents you inspected -- you can't say definitively what the drying time would be. Is that fair? A. Exactly."). Because Ms. Kessler is not, by her own admission, an "ink expert" she could not reach reliable conclusions about these two factors and her testimony should be excluded. *Id.* 104:6-8 ("Q. You said you are not an expert on ink; is that correct? A. That's correct.") (emphasis added).

Next, Ms. Kessler focused on the lack of indentation on the back of the signature page beneath David King's signature. She stated that she "felt" the back paper and did not feel any indentation where the signature was. *Id.*, 121:9-10. But Ms. Kessler admits that indentations may or may not exist depending on the weight of the paper, the surface the document was signed on, and how much pressure the signer put on the page. *Id.*, 121:16-122:9. Ms. Kessler identified what she believes to be the weight of the paper, but Ms. Kessler admitted she did not have any knowledge about how much pressure Mr. King applied when he signed the Note or on what surface he signed it. *Id.*,

122:17-123:9. Ms. Kessler also admits that the lack of indentations would not necessarily rule out the document as being an original. *Id.*, 124:5-8. Ms. Kessler admits that she is not an expert on paper. *Id.*, 134:13-14. She agrees that the lack of indentations "is not all that helpful for you here." *Id.*, 125:4-6. Based on Ms. Kessler's own admissions, testimony about the lack of indentations is irrelevant and not reliable, and are unhelpful in resolving the issue of whether the signatures are authentic.

Ms. Kessler next questioned the authenticity of the Deed of Trust by stating that Julie King's signature "did not look right" to her. *Id.*, 125:16-20. But Ms. Kessler could not identify what did not "look right" about the signature because she did not have any exemplars of Ms. King's signature. *Id.* 126:3-10. The testimony about Ms. King's signature should be excluded because Ms. Kessler lacks foundation as to what Ms. King's signature should look like.

Ms. Kessler has also suggested that the lack of wear and tear on the Note suggested that the document was not the original. However, Ms. Kessler admits that she has no knowledge of "how document custodians keep and secure original mortgage documents" or of "the practices in the mortgage loan industry and servicing industry for when original documents such as a note or deed of trust are physically moved or change hands in connection with assignments." *Id.*, 139:8-11, 140:16-141:1.

Finally, First, Ms. Kessler states that her conclusion that the documents had been altered comes from her examination of the electronic copies and scanned images of the documents. Kessler Dep. 39:14-15 ("[T]he PDF[] is where the evidence is, not in the paper documents."); *see also id.*, 29:14-15 ("There's no evidence on that hard copy in San Francisco that it's altered."); *id.* 117:7-10 (agreeing that it is "fair to say that [her] opinions are based primarily on the PDF files"). As discussed above, evidence about supposed irregularities in subsequent *electronic* copies is wholly irrelevant to whether the physical hardcopies Ms. Kessler examined are authentic. But even if this issue were relevant, Ms. Kessler admits that she does not have the technical experience necessary to evaluate the issues she identifies with the electronic copies, she can only recognize potential issues. *Id.,* 31:4-13) ("And that's how come I asked [Plaintiff's counsel] to get other eyes on this, technical eyes, because that starts to get into technology that's outside my field. . . . Or, you know, I haven't been properly trained in that. I've been trained enough to be able to spot it when it happens when I can get the electronic file.").

Because Ms. Kessler lacks the necessary expertise and factual foundation, her testimony as to the authenticity of the Note in U.S. Bank's possession should be excluded.

**D.     Any expert opinion that King did not sign the Deed of Trust should be excluded, because King has already stipulated that he executed the Deed of Trust.**

King should not be permitted to present experts to question the authenticity of his signature on the Deed of Trust, because he has already stipulated he signed that document. King stipulated to this Court that "On March 27, 2008, Plaintiff and Julie Yevette King executed a Trust Indenture under the Montana Small Tract Financing Act in the amount of $ 350,000, which was recorded April 21, 2008 as Doc. No. 602923 of the records of Ravalli County, Montana." Attached as Exhibit 5 to this brief is a copy of that Deed of Trust, which U.S. Bank's counsel obtained from Ravalli County's records on June 19, 2019.[2] Pursuant to Local Rule16.2(b)(3), it is an agreed fact that King signed that document. King should not be allowed to present expert testimony to generate confusion regarding a fact to which he has already stipulated.

## IV.   CONCLUSION

For the reasons set forth herein, U.S. Bank respectfully requests an order excluding the Plaintiff's expert testimony of Ms. Kessler and Mr. Witzke.

---

[2] The Court can take judicial notice of publicly recorded documents, and U.S. Bank requests that it do so here. Rule 201, F. R. Evid.; *Redman v. Bank of* America, Cause No. CV-15-10-BU-BMM, 2016 WL 406334 (D. Mont. Feb. 2, 2016) (taking judicial notice of deed of trust, promissory note, and assignment of deed of trust).

Dated: June 19, 2019 **CROWLEY FLECK, PLLP**

By: /s/ Kenneth K. Lay
Kenneth K. Lay
900 N. Last Chance Gulch #200
Helena, MT 59601

## CERTIFICATE OF COMPLIANCE UNDER LR 7.1(d)(2)

This brief complies with the applicable word-count limitation under Local Rule 7.1(d)(2)(A), because it contains 3,984 words, including headings, footnotes, and quotations, but excluding the caption, certificate of compliance, and any certificate of service, tables of contents and authorities, and exhibits index.

Dated: June 19, 2019　　　　　　　**CROWLEY FLECK, PLLP**

By: */s/* Kenneth L. Lay
　　Kenneth K. Lay
　　900 N. Last Chance Gulch, Suite 200
　　Helena, MT 59601